**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**STEPHEN MICHAEL GALLUCCI,**

**Plaintiff,**

**-against-**

**KILOLO KIJAKAZI,** ***Acting Commissioner of Social Security*****,**

**Defendant.**

**22-CV-3174 (ALC)**

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Stephen Michael Gallucci brings this action to reverse the final decision of the Defendant, the Acting Commissioner of Social Security (the "Commissioner" or "Defendant"), that Plaintiff was not entitled to Title XVI Supplemental Security Income benefits ("SSI"). Both parties have filed motions for judgment on the pleadings pursuant to Fed. R. Civ. P. Rule 12(c). For the reasons set forth below, both motions are **GRANTED IN PART** and **DENIED IN PART,** and this case is remanded to the Commissioner for further proceedings consistent with this opinion.

## BACKGROUND

### I. Procedural History

Gallucci filed an application for SSI and Disability Insurance Benefits ("DIB") on July 30, 2018, with an alleged onset date of August 1, 2008. (R., ECF No. 11 at 127.) On October 16, 2018, the Commissioner denied plaintiff's SSI application. (R. at 188.) The Commissioner denied Plaintiff's request for reconsideration on March 25, 2020. (R. at 11, 223.) Gallucci then filed a written request for a hearing before an Administrative Law Judge ("ALJ"). (R. at 11.) The ALJ presided over two telephone hearings on July 7, 2020 and October 5, 2020. (R. at 1, 11.) After the October 5 hearing, Gallucci withdrew his application and amended the alleged onset date to

July 30, 2018. (R. at 11.) On October 19, 2020, the ALJ found that Gallucci was not disabled under the Act and not eligible for SSI. (R. at 1, 11). On April 26, 2021, the Appeals Council denied Gallucci's request for review, rendering the ALJ's decision the final decision of the Commissioner. (R. at 1-4).

Plaintiff filed this action on April 18, 2022. (Compl., ECF No. 1.) Plaintiff filed a Motion for judgment on the pleadings on December 2, 2022. (ECF No. 12.) Defendant also moved for judgment on the pleadings on January 27, 2023. (ECF No. 15.)

## II. **Factual Background**

Gallucci was born on May 28, 1965. (R. at 127.) He has a high school diploma. (R. at 102.) Gallucci was last employed as a bartender in 2009. (R. at 82.) Gallucci alternates between homelessness, staying with his mother or with friends. (R. at 85, 95.) He alleges he has not been able to work due to right shoulder arthrosis, anxiety disorder, eczema, and gout.

### A. Non-Medical Evidence

#### i. *Plaintiff's Testimony*

On October 5, 2020, Plaintiff testified that his right shoulder was "completely shot," that he felt "soreness" in his right shoulder, and that the motion of his shoulder was painful. (R. at 90.) Because of his "extremely unbearable sensitive stomach," he was not able to take most medications to ease his symptoms. (R. at 99–100.) He had previously been prescribed Prednisone after hospital visits for his eczema and shoulder pain. (R. at 91.) He alternated between prescription and over-the-counter hydrocortisone creams for his eczema. (R. at 93.) Plaintiff described the eczema in his legs and arms as "torturing [him]." (R. at. 92.) Plaintiff testified that when he wears a long-sleeved shirt, "the material rubbing against [his] skin agitates [him] very, very severely." (R. at

100–101.) H testified that his eczema is exacerbated by sweat and extreme temperatures. (R. at 101.)

ii. *Vocational Expert's Testimony*

Vocational expert, Dawn Blythe, testified that "overhead reach" was not addressed in the Dictionary of Occupational Titles. (R. at 104.) Based on her experience, Blythe characterized the frequency of "overhead reach" involved in bartending as 'occasional'. (R. at 105.) She testified that bartenders engage in "frequent reaching in general." (R. at 106, 107.) She also testified that a person similarly situated to the claimant could not continue to bartend if limited to ". . . reaching in everything but overhead. . ." (R. at 107.)

B. Medical Evidence

i. *Plaintiff's Treating Physicians*

Plaintiff stated that had not seen a regular physician or undergone any physical therapy since 2016. (R. at 472; *see also* R. at 486.)

On October 5, 2018, Plaintiff visited the emergency department for a skin rash and was diagnosed with chronic eczema flare, bilateral upper and lower extremity. (R. at 576–77). Plaintiff was prescribed Bactrim, Pepcid, Vistaril, Hydrocortisone and Prednisone. (R. 578, 589).

Shortly before the close of the relevant period, in July 2020, he was treated by Dr. Barry Kraushaar for low back pain and right shoulder pain, and was diagnosed with localized primary osteoarthritis of right shoulder, arthralgia of right shoulder region and lumbar sprain. (R. at 507–09.) The doctor found that the lower back pain was "was not as severe" and noted that although "[h]is limitation of motion is likely permanently reduced […] we will try some physical therapy to try to live with it." (*Id.*) Plaintiff declined administration of a cortisone shot or a visco supplementation injection, and the doctor noted that "the shoulder will have severe and permanent

limitations." (*Id.*)   Dr. Kraushaar noted that Plaintiff should have shoulder replacement surgery "but [wa]s not ready for one yet." (*Id.*)

ii.  *Diagnostic Tests*

An October 2, 2018 x-ray examination of Plaintiff's lower back showed that he had "retrolisthesis" at the L4–L5 level of his lumbar spine. (R. 477.)

On October 5, 2018, an x-ray examination of Plaintiff's neck indicated that he had certain "degenerative change", including "disc space narrowing, ranging from moderate to severe, associated with reactive hyperostosis … at all levels of between C-3 and C-6" although "[n]o acute fracture or subluxation [was] seen." (R. 478).

A December 13, 2019 x-ray examination of Plaintiff's right shoulder showed that "mild acromioclavicular joint space arthrosis", but that "[t]he remainder of the joint spaces appear to be well maintained. (R. 491).

iii.  *Consultive Examinations*

Plaintiff was examined by three consultive examiners in connection with his claim:  Dr. David MacKinnon, Dr. Michael Healy, who performed physical evaluations, and Dr. Melissa Antiaris, who conducted a psychological examination.

On October 2, 2018, Dr. Mackinnon found that Plaintiff demonstrated moderate limitations reaching ahead or overheard, lifting, pushing, pulling, and carrying, as well as a mild limitation in prolonged walking. (R. at 470–75.)

On November 5, 2019, Dr. Healy found that Plaintiff had "decreased strength in [the legs, ankles, and feet,] as well as right [upper arm, forearm, and hand], decreased range of motion of the right shoulder, "moderate to marked limitations in reaching, grasping[,] and holding objects

with the right [upper arm, forearm, and hand]", and "moderate limitation sitting, standing, walking, bending, lifting and climbing stairs." (R. at 487- 88.)

      iv. *State Agency Consultant Opinions*

On November 5, 2019, Dr. Antiaris performed a psychological evaluation of Plaintiff and diagnosed Plaintiff with an anxiety disorder. (R. at 480–83.) She indicated that Plaintiff's symptoms included "mild limitations in his ability to regulate emotions, control behavior and maintain well-being", but concluded that plaintiff's mental impairment would not significantly hinder his ability to "function on a daily basis." (R. at 482.)

On November 18, 2019, state agency psychological consultant E. Kamin, Ph.D. opined that the evidence in the record showed that Plaintiff had a non-severe anxiety disorder. (R. at 148.) Dr. Kamin found that Plaintiff faced no limitations in his ability to understand, remember or apply information, and faced mild limitations for interacting with others, maintaining concentration, and in adapting or managing himself. (R. at 148-49.)

On December 19, 2019, state agency medical consultant Dr. J. Randall reviewed the record and concluded that Plaintiff could occasionally lift, pull, push, or carry up to 20 pounds or frequently do the same up to 10 pounds. (R. at 150.) Dr. Randall further found that Plaintiff could sit, stand, or walk for about six hours and that Plaintiff could occasionally use his upper-right extremity to climb, stoop, kneel, crouch, crawl, or reach overhead. (R. at 151.)

On March 9, 2020, state agency medical consultant Dr. M. Kirsch reviewed the record and concluded that Plaintiff could occasionally lift, push, pull, and carry up to 20 pounds and frequently lift, push, pull, and carry up to 10 pounds of weight. (R. at 170–171.) He assessed that Plaintiff could stand and/or walk for about six hours and sit for about six hours in an eight-hour workday

and concluded that Plaintiff could occasionally climb, stoop, kneel, crouch, crawl, and reach overhead with the upper right extremity.  (*Id.*)

On March 18, 2020, state agency psychological consultant Dr. L. Haus reviewed the evidence in the record and opined that Plaintiff had a non-severe anxiety disorder and faced mild limitations in his ability to interact with others, adapt or manage himself, and concentrate, persist, or maintain pace.  (R. at 168–69.)

## LEGAL STANDARD

### I.     Standard of Review

A district court may review the Commissioner's determination under 42 U.S.C. § 405(g) and can set aside the final decision if there is no "substantial evidence" supporting it or upon the application of an incorrect legal standard.  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence, as set forth in § 405(g), is "more than a mere scintilla" and requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F. 3d 117, 127 (2d Cir. 2008) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)).  The "substantial evidence" standard is even more deferential than the "clearly erroneous" standard.  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).  "The Court, however, will not defer to the Commissioner's determination if it is the product of legal error."  *DiPalma v. Colvin*, 951 F. Supp. 2d 555, 566 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).  The same standard as motion to dismiss for failure to state a claim under Rule 12(b)(6) governs motions for judgment on the pleadings.  *Regan v. Kijakazi*, No. 21-CV-03534 (ALC), 2022 WL 4592897, at *5 (S.D.N.Y. Sept. 30, 2022).

## II.     Determining Disability

A plaintiff has a disability if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A). The disability must be serious enough "that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Further, a claimant's subjective complaints about their symptoms are, alone, not enough to establish a disability. 20 C.F.R. §§ 404.1529(a), 416.929(a). These complaints must be corroborated by a medical condition that reasonably could be expected to result in the conditions that, considered with all other evidence, demonstrate that the claimant is disabled. Where subjective claims are not completely supported by the Administrative Record, the ALJ will consider the frequency and duration of the symptoms, precipitating and aggravating factors, the effect of medication, treatment, functional restrictions, and Claimant's daily activities. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

A district court can only reject facts determined by the ALJ "if a reasonable factfinder would have to conclude otherwise." *Ortiz v. Saul*, No. 19-cv-942, 2020 WL 1150213 (S.D.N.Y. Mar. 2020) (quoting *Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012)). Thus, the Court "may not 'substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Briody v. Commissioner of Social Security*, No. 18-cv-7006, 2019 WL 4805563, at *7 (S.D.N.Y. Sept. 30, 2019) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (internal quotation marks and citation omitted)).

"The Commissioner of Social Security has promulgated regulations that set forth a five-step sequential evaluation process to guide disability determinations." *Cichocki v. Astrue*, 729 F.3d 172, 174 n. 1 (2d Cir. 2013) (internal citation omitted).  The Second Circuit describes this process as:

> (1) First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> (2) If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.
>
> (3) If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him per se disabled.
>
> (4) Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.
>
> (5) Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417–18 (2d Cir. 2013) (alterations omitted).

The Commissioner only has the burden to prove the fifth step, with the plaintiff having the burden for the preceding steps.  *Id.*  "In the ordinary case, the Commissioner meets his burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids)." *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004), *amended in part on other grounds on reh'g*, 416 F.3d 101 (2d Cir. 2005) (quoting *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)).

## DISCUSSION

### I.     The ALJ's Decision

On October 19, 2020, the ALJ found that Plaintiff had not been under a disability within the meaning of the Social Security Act from July 30, 2018, through the date of decision. (R. at 12.)  The ALJ evaluated Plaintiff's claim in accordance with the SSA's five-step sequential evaluation process. (R. at 12–20.)  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since August 14, 2019, the date Plaintiff commenced his application. (R. at 14.) At step two, the ALJ found that Plaintiff suffered from severe impairments, namely "degenerative changes of the cervical spine; degenerative changes of the lumbar spine; eczema; gout; and right shoulder arthrosis." (R. at  14–15.)  However, he determined that Plaintiff's anxiety disorder only represented a non-severe limitation. (R. at 16.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments which met the severity of the enumerated impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (R. at  16.) At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform "light work" as defined in 20 CFR 404.1567(b) and 416.967(b). (R. at  16–19.)  The ALJ also imposed additional restrictions "that the claimant cannot climb ladders, ropes, or scaffolds.  He can push/pull, climb ramps and stairs, balance, bend, stoop, kneel, crouch, and crawl on an occasional basis.  He can reach overhead with his dominant right arm on an occasional basis." (R. at 16.)  At step five, the ALJ found that Plaintiff could still perform his past relevant work as a

bartender, which would not require performance of activities precluded by his RFC. (R. at 19–20.)

The ALJ ultimately found that "[t]he claimant has not been under a disability, as defined in the Social Security Act, since August 14, 2019, the date the application was filed (20 CFR 416.920(f))." (R. at 20.)

## I. The ALJ's RFC Determination Adequately Considered all Limitations from Plaintiff's Shoulder Impairments

Plaintiff argues that the ALJ "cherry-picked" the medical evidence in the record to support the conclusion that Plaintiff was not disabled. (ECF No. 13 at 9.) Specifically, Plaintiff claims that (1) even though the ALJ stated that he found Dr. MacKinnon's opinion to be persuasive, the ALJ overlooked the portion of the same opinion where Dr. MacKinnon found that Plaintiff had "moderate limitation in reaching ahead or overhead" and (2) the ALJ did not properly consider Dr. Healy's finding that Plaintiff had "moderate limitation sitting, standing, walking, bending, lifting and climbing stairs." (*Id.* at 9–10.) Plaintiff contends that had the ALJ properly considered this evidence, the ALJ would have found that Plaintiff was disabled under the meaning of the statute and regulations. (*Id.* at 12.)

When reviewing an ALJ's decision, the district court must review the administrative record as a whole to determine if the ALJ's onion is supported by the substantial evidence. *Herrera v. Commr. of Social Sec.*, No. 20-CV-7910 (KHP), 2021 WL 4909955, at *9 (SDNY Oct. 21, 2021). Because the standard is so deferential, district courts may not re-weigh evidence that has been properly considered by the ALJ. *See Krull v. Colvin*, 669 Fed. App'x 31, 32 (2d Cir 2016). "Genuine conflicts in the medical evidence are for the Commissioner to resolve", and may not be found erroneous by the court simply because a different conclusion could have been reached. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). However, an ALJ's decision may be

remanded if "it ignores or mischaracterizes medical evidence or cherry-picks evidence that supports his RFC determination while ignoring other evidence to the contrary." *Jackson v. Kijakaz*i, No. 20-CV-7476 (JLC), 2022 WL 620046, at *18 (S.D.N.Y. Mar. 3, 2022) (collecting cases).

The Court finds that the ALJ did not "cherry-pick" evidence in the record and that his RFC determination was supported by substantial evidence with respect to Plaintiff's shoulder impairments. First, while Dr. MacKinnon found that Plaintiff had a moderate limitation in reaching ahead or overhead, Dr. Randall found that Plaintiff only faces limitations when reaching overhead with on his right side, not ahead. (R. at 151, 475.) Dr. Kirsch reached the same conclusion, finding no limitation in Plaintiff's ability to reach ahead. (R. at 171.) In evaluating this conflicting evidence and reaching his decision, the ALJ specifically noted this conflict, and ultimately found that Dr. MacKinnon's "opinion regarding the ability to reach ahead [was] not persuasive[because it was] inconsistent with the opinions expressed by Dr. Randall and Dr. Kirsch…[who] assigned limitations [in] only the ability to reach overhead." (R. at 18.) Second, Plaintiff argues the ALJ selectively rejected Dr. Healy's conclusion that plaintiff had "moderate to marked limitations in reaching, grasping and holding objects with the right upper extremity" and instead improperly found that Plaintiff's RFC included limitations only in "reach[ing] overhead with [Plaintiff's] right dominant arm on an occasional basis.'" (ECF No. 13 at 15.) Again, in rendering his decision, the ALJ explained that Dr. Healy's conclusion was not consistent with Dr. Healy's own finding that plaintiff "had a full and 5/5 bilateral grip and intact bilateral hand dexterity." (R. at 18, 488.) This finding was consistent with other evidence in the record which "was negative for any clinical findings reflecting such limitations." (R. at 18.)

Plaintiff's disagreement with the ALJ's RFC finding goes to the weight the ALJ afforded to certain medical opinions, which cannot be re-evaluated by the district court. *See Krull*, 669 Fed. Appx. at 32 ("[plaintiff's] disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also Veino*, 312 F.3d at 588. The ALJ was entitled to weigh the competing evidence in the record as a whole in rendering his decision. *See Herrera v. Comm'r of Soc. Sec.*, No. 20-CV-7910 (KHP), 2021 WL 4909955, at *10 (S.D.N.Y. Oct. 21, 2021) (finding that "the ALJ properly explained how the various medical opinions were supported or not and consistent or not with other opinion and evidence in the record, as required by 20 C.F.R. §§ 404.1520c(b), 416.920c(b).") The ALJ's finding is not required to, "perfectly correspond with any of the [individual] opinions of medical sources cited." *Matta v. Astrue,* 508 Fed. Appx. 53, 56 (2d Cir. 2013). Instead, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole", as is the case here. *Id.* Though Plaintiff may disagree with the ALJ about how much weight to afford certain facts over others, the Court finds that the ALJ's RFC determination adequately considered the full breadth of the evidence in the record and was supported by substantial evidence as to Plaintiff's shoulder impairments. *See id.* at 57.

## II. The ALJ Adequately Considered Any Potential Limitations Arising From Plaintiff's Eczema and Gout

Plaintiff argues that the ALJ did not properly consider any limitations arising from Plaintiff's severe gout and eczema when determining Plaintiff's RFC. (ECF No. 13 at 14–15.)

The ALJ determined that Plaintiff's eczema and gout were "severe", but found that they did not meet or equal one of the listed impairments in listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P. (R. at 14–16.) The ALJ then considered the evidence in the record regarding Plaintiff's limitations and determined that Plaintiff had the RFC to perform "light work", which "requires

intermittently standing or walking for a total of approximately 6 hours of an 8–hour workday, with sitting occurring intermittently during the remaining time. A person who is deemed able to perform light work is also capable of doing sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (citing 20 C.F.R. § 404.1567(b)). The ALJ also imposed additional restrictions "that the claimant cannot climb ladders, ropes, or scaffolds. He can push/pull, climb ramps and stairs, balance, bend, stoop, kneel, crouch, and crawl on an occasional basis. He can reach overhead with his dominant right arm on an occasional basis." (R. at 16.)

The Court finds that the ALJ adequately considered any limitations arising from Plaintiff's gout and eczema. In determining, Plaintiff's RFC, the ALJ acknowledged that Plaintiff testified that his "eczema affecting his legs/arms is exacerbated by temperature extremes and that he experiences gout exacerbations during which he cannot be on his feet four times per year that last up to three weeks each." (R. At 17.) However, the ALJ also noted that Plaintiff was otherwise able "to watch TV, attend to his personal care, prepare meals, take public transportation, travel independently, do laundry, and shop" and that the medical evidence in the record only supported some of Plaintiff's complained-of symptoms because Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (R. at 17.)

Specifically, with respect to Plaintiff's gout condition, the ALJ noted that there was no indication in the record that Plaintiff sought treatment for any of these flare ups during the relevant time period. (R. at 17.) This lack of treatment history for Plaintiff's gout supports the ALJ's determination that the condition did not render him disabled for the purpose of social security benefits. *See Naval v. Astrue*, 303 F. App'x 18, 20 (2d Cir. 2008) (affirming district court find that

ALJ appropriately relied on absence of medical records "to find that [claimant's] claims of total disability were undermined by his failure to seek regular treatment for his allegedly disabling condition.") (summary order); *see also Salvaggio v. Apfel*, 23 F. App'x 49, 51 (2d Cir. 2001) (finding that "the plaintiff's choice to seek only minimal medical attention of her symptoms…supports the finding that the plaintiff was not under a disability") (summary order). Additionally, Plaintiff's testimony the frequency and severity of the condition is contradicted by his statement to Dr. MacKinnon that his gout flare ups usually only lasted for a period of five days. (R. at 108–09, 473.) The physicians who evaluated Plaintiff's gout condition concluded that Plaintiff only had mild or moderate limitations for prolonged walking (R. at 475, 488), and Dr. Randall and Dr. Kirsch noted that despite his gout, Plaintiff was still able to stand or walk for up to six hours a day. (R. at 150–52, 170–72.) These limitations were factored into the ALJ's determination that Plaintiff retained the RFC for light work. (R. at 17–18.)

As to Plaintiff's eczema, in making his RFC determination, the ALJ noted that Plaintiff only went to the emergency room twice to deal with flare ups from his eczema and that the only required treatment was topical steroids to be administered "on an as needed basis". (R. at 17, 514–93.) Again, the lack of extensive treatment history supports the ALJ's finding that this condition did not render Plaintiff disabled for the purposes of social security benefits. *See Naval*, 303 F. App'x at 20; *see also Salvaggio*, 23 F. App'x at 51. Additionally, in evaluating any limitations arising from Plaintiff's eczema, the ALJ relied on the evaluations of the Dr. Randall and Dr. Kirsch, who reviewed the medical evidence of Plaintiff's eczema, and found that Plaintiff was capable of performing work consistent with the ALJ's RFC determination of light work. (R. at 18.) While Plaintiff argues that the ALJ overlooked Dr. MacKinnon's finding that there were "areas of paleness and pinkish appearing throughout all over his face and arms" and "scabbing in

the right [wrist]" (ECF No. 13 at 14 (citing R. at 474)), Plaintiff does not explain how Dr. MacKinnon's finding is inconsistent with the ALJ's determination that Plaintiff retained the capacity for light work.

Accordingly, having considered the evidence in the record, the Court finds that the ALJ's RFC determination with respect to Plaintiff's eczema and gout was supported by substantial evidence.

### III. The ALJ Failed to Consider Any Potential Limitations Arising From Plaintiff's Anxiety Disorder

Plaintiff argues that the ALJ failed to adequately consider any impairments arising from Plaintiff's non-severe mental impairment when formulating Plaintiff's RFC. (ECF No. 13 at 12–14.)

When determining a claimant's RFC, an ALJ must make his determination based on all of the relevant medical and other evidence in the record, including the claimant's credible testimony, the objective medical evidence, and medical opinions from treating and consulting sources." 20 C.F.R. § 404.1545(a)(3). This includes consideration not only of a claimant's severe impairments, but also of a claimant's non-severe impairments as well. 20 C.F.R. § 404.1545(a)(2); *Parker-Grose v. Astrue*, 462 Fed. Appx. 16, 18 (2d Cir. 2012) (summary order).

The Court concludes that the ALJ failed to consider Plaintiff's non-severe mental impairments when assessing Plaintiff's RFC. At step two, the ALJ determined that Plaintiff's anxiety disorder was "mild", noting that Plaintiff had "no limitation in the ability to understand, remember, or apply information." However, the ALJ also noted that Plaintiff demonstrated "mild limitation in the ability to interact with others; no more than a mild limitation in the ability to concentrate, persist, or maintain pace; and a mild limitation in the ability to adapt or manage oneself." (R. at 15.) Although a finding of a non-severe mental limitation does not necessitate an

RFC determination that "include[s] a specific limitation in the RFC corresponding to each of the claimant's non-severe impairments[,]" *DuBois v. Comm'r of Soc. Sec.*, No. 20-CV-8422 (BCM), 2022 WL 845751, at *5 (S.D.N.Y. Mar. 21, 2022), an ALJ is still required to evaluate a Plaintiff's non-severe impairments when formulating their RFC determination. *Parker–Grose*, 462 Fed.Appx. at 18 ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe [ ]'... when we assess your [RFC] ....") (citing 20 C.F.R. § 404.1545(a)(2)). Moreover, an "ALJ's assessment at step two d[oes] not relieve him of the requirement to discuss [a plaintiff's] mental health impairments in formulating the RFC." *Garcia v. Comm'r of Soc. Sec.*, No. 21-CV-01230 (SDA), 2022 WL 4234555, at *14 (S.D.N.Y. Sept. 14, 2022), *amended in part*, No. 21-CV-01230 (SDA), 2022 WL 17103621 (S.D.N.Y. Nov. 22, 2022).

Here, the ALJ included no discussion of Plaintiff's mental limitations at step four. At step two, the ALJ evaluated the evidence supporting Plaintiff's anxiety disorder, determined it only represented a non-severe impairment, and stated that "all medically supported restrictions have been incorporated into the decision's residual functional capacity assessment, including those stemming from both severe and non-severe impairments." (R. at 16.) However, this statement does not obviate the ALJ's duty to fully account for and explain a claimant's severe and non-severe limitations when formulating a claimant's RFC at step four. "If the ALJ concludes that the plaintiff's mental impairments do not require any RFC accommodation, he should clearly explain why." *Novas v. Kijakazi*, No. 22-CV-1020 (MKV)(BCM), 2023 WL 2614362, at *12 (S.D.N.Y. Mar. 8, 2023), *report and recommendation adopted sub nom. Novas v. Comm'r of Soc. Sec.*, No. 22-CV-1020 (MKV), 2023 WL 2613550 (S.D.N.Y. Mar. 23, 2023). This failure constitutes legal

error and grounds for remand. *Parker–Grose*, 462 Fed.Appx. at 18; *see also Coulter v. Comm'r of Soc. Sec.*, No. 22-CV-1149 (RWL), 2023 WL 3346505, at *8 (S.D.N.Y. May 10, 2023).

## CONCLUSION

Accordingly, for the above-mentioned reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 12) is **GRANTED IN PART** and **DENIED IN PART** and Defendant's motion for judgment on the pleadings (ECF No. 15) is **GRANTED IN PART** and **DENIED IN PART**. This case is remanded to the Commissioner for further proceedings consistent with this opinion.

The Clerk of Court is respectfully requested to terminate all pending motions and close this case.

**SO ORDERED.**

**Dated: September 15, 2023**
**New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**